**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. 3:26-CR-00009-MAS-1** |
| **ANMAR ALI ABDELHALIM ABUDAIEH,** | ) | |
| **Defendant.** | ) | |

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

This matter came before the Court for a bench trial on September 28, 2026. Defendant Anmar Ali Abdelhalim Abudaieh ("Abudaieh") was represented by Attorney Nicholas Nash, and the Government was represented by United States Attorney Jason Parman. Abudaieh was indicted by a grand jury of eluding examination or inspection by immigration officers in violation of 8 U.S.C. §1325(a)(2). [DE 1]. The Government alleges that Abudaieh violated 8 U.S.C. §1325(a)(2) by failing to provide an updated address to immigration officers and possibly violating state law. [R. 4:45-5:15]. The Court now issues its findings of fact and conclusions of law in accordance with Federal Rules of Criminal Procedure 58 and 23(a).

## I. FINDINGS OF FACT

The Indictment in this matter alleges the following: "On or about August 6, 2026, in Franklin County, in the Eastern District of Kentucky, and elsewhere,

ANMAR ALI ABDELHALIM ABUDAIEH, an alien who had previously entered the United States at a time and place other than as designated by immigration officers, eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(2)." [DE 1]. Before trial, the parties stipulated that on or about May 14, 2024, Abudaieh illegally entered the United States near Tecate, California. [R. 2:00-3:40]. The parties also stipulated that Abudaieh was ordered removed by an immigration judge on October 17, 2025. [R. 2:00-3:40].

During the trial, the Court heard from Officer Senica Woods, HSI ("Officer Woods"). Officer Woods testified that Abudaieh was apprehended near the Mexico-California border and taken to the Brownfield Border Patrol Station. [R. 23:42-23:49]. The Brownfield Border Patrol Station is located in proximity to the Tecate port of entry. At the processing facility, Abudaieh underwent an inspection including fingerprinting, photography, and an interview. [R. 23:18-23:57]. The inspection is proscribed in 8 CFR Part 235.1. During this process, Agent Joseph J. Jung was able to determine that Abudaieh was a Jordanian national who entered the United States without documentation. [R. 23:34-23:48 referencing Ex. 2].

Upon completion of the inspection under 8 CFR Part 235.1, Abudaieh was released from the processing facility on his own recognizance and given a court date with terms of release. [R. 25:03-25:10; referencing Ex.2]. The Order of Release of Recognizance required, among other things, that Abudaieh must provide notice of any change of address and that he was not to violate any state law. [Ex. 2]. Officer Woods testified that, when released, the inspection was complete. [R. 37:35-37:55].

The government presented evidence that in late 2025 and early 2026, almost two years after his inspection at the Brownfield facility, Abudaieh violated his release order. First, Abudaieh violated Kentucky law. [R. 16:55-17:10]. Officer Woods testified that in December of 2025, Franklin County Police cited Abudaieh for failure to update his address on a driver's license. [R. 16:55-17:31]. That charge was later dismissed. But Abudaieh was arrested by Franklin County Police in August of 2026 for disorderly conduct and failure to update his address and/or transfer his driver's license. [R. 17:58-18:18:26]. The Pretrial Services Report indicates these charges are pending and remain unadjudicated. The government did not provide the Court with citations or any other evidence pertaining to these allegations.

Second, Abudaieh failed to provide notice to an immigration officer of his move from Illinois to Kentucky. Abudaieh did not contest this fact.

## II. FINDINGS OF LAW

### A. THE CRIME OF ELUDING EXAMINATION

Title 8, Section 1325(a)(2) provides: "Any alien who eludes examination or inspection by immigration officers… shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both[.]" 8 U.S.C. § 1325(a)(2).

To convict a defendant of this crime, the Court perceives the following elements for which the government must prove, beyond a reasonable doubt: (1) defendant was an alien; (2) who knowingly; (3) eluded examination or inspection; (4) by an immigration officer.

**1. <u>Alien</u>**

The Immigration and Nationality Act ("INA"), of which 8 U.S.C. § 1325 is a provision, defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. §1101(a)(3).

**2. <u>Knowingly</u>**

Because the term "knowingly" varies by context, the Sixth Circuit and several other court of appeals, have looked to the Model Penal Code for help in defining that term. *See*, *e.g.*, *United States v. Ogden*, 685 F.3d 600, 604 (6th Cir. 2012). The Model Penal Code defines "knowingly as follows: A person acts knowingly with respect to a material element of an offense when: (1) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (2) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result. Model Penal Code § 2.022(2)(b).

**3. <u>Eluded Examination or Inspection</u>**

What it means for an alien to "elude examination or inspection" under §1325(a)(2) is an issue of first impression for this Court. The Government argues that an offense does not have to occur at a port of entry. [DE 20, Page ID# 5]. Abudaieh argues that the plain language supports a port of entry requirement as an element of the offense. [DE 21, Page ID# 1-2].

This Court is faced with interpreting the language of 8 U.S.C. §1325(a)(2), specifically, whether the word "elude," requires the offense to occur at a port of entry. The only circuit court that has reviewed the elements of 8 U.S.C. § 1325(a)(2) is the

Ninth Circuit in *United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019). Like this court, the Ninth Circuit sought to determine the meaning of "eludes examination or inspection by immigration officers" within the statute. In the end, the Ninth Circuit held that a defendant cannot be convicted under 1325(a)(2) unless the government proves that the defendant's conduct occurred at a port of entry designated for examination or inspection. *Id*. at 946. In reaching that conclusion, the court relied on three interpretive tools: (1) the text of the statute, (2) the original meaning of that text as understood when Congress enacted it, and (3) longstanding canons of statutory construction.

First, as for textualism, the circuit began "as usual, with the statutory text." *Id*. at 948 (quoting *Maslenjak v. United States*, 582 U.S. 335, 341 (2017)). The government's position was that any alien who crosses into the United States without examination or inspection has necessarily "eluded" that process, regardless of where the crossing occurred. *Id*. at 947–48. The court rejected that reading as inconsistent with the ordinary meaning of the word "elude." Surveying contemporary dictionary definitions, the court observed that "not every word in a statute ... extend[s] to the outer limits of its definitional possibilities," and that the government's broad reading "sits uncomfortably with common usage." *Id*. at 948 (quoting *Abuelhawa v. United States*, 556 U.S. 816, 820 (2009)). To "elude" something ordinarily connotes more than mere avoidance; it implies "some form of 'escape,' whether through 'quickness [or] cunning[ness].'" *Id*. (quoting *United States v. Oscar*, 496 F.2d 492, 494 (9th Cir. 1974)). The court illustrated the point with an example: in the case of seamen who

evaded a shipboard inspection by slipping past the guards stationed on and about the vessel, one could fairly say the men had "eluded" the guards, since they were exposed to a risk of detection and escaped it through stealth. *Id.* (discussing *The Tuscania*, 42 F.2d 168, 169 (2d Cir. 1930)). It would be odd, by contrast, to say the same men had "eluded" the guards if they had simply avoided the port altogether and traveled by an entirely different route. To elude, the court reasoned, ordinarily contemplates a risk of exposure to the process at issue, followed by an escape from it. Applying that understanding to the statute, an alien "eludes examination or inspection" only if the alien's conduct occurs at a time and place where the alien is actually at risk of undergoing those processes in the first place. *Id.* Because those processes occur at open and operating ports of entry, the court concluded that the criminal conduct, the eluding itself, must occur there as well. *Id.*

Second, as for originalism, because the phrase "eludes examination or inspection by immigration officers" has remained unchanged since Congress first used it in 1929, the court applied the presumption that the phrase "presumptively retains its original meaning." *Id.* at 948 (quoting *Whitfield v. United States*, 574 U.S. 265, 267 (2015)). Dictionaries contemporaneous with the 1929 enactment defined "elude" as to "avoid slyly, by artifice, stratagem, or dexterity" or to "escape from in a covert manner," consistent with the ordinary meaning already identified in the textualist analysis above. *Id.* The court also traced the statute's drafting history. Congress modeled the 1929 language on a Canadian immigration statute that applied only to a person who "**at a port of entry** eludes examination by an

officer." *Id*. at 953 (emphasis added). Congress adopted the operative verb "eludes" from that provision but omitted the phrase "at a port of entry," which the court read not as an expansion but as reflecting that the historical understanding of "eludes" already carried the limitation. *Id*. at 952–953. This history, together with Congress's 1929 decision to criminalize "surreptitious[]" entry in place of a broader 1917 prohibition on entering "without inspection," confirmed rather than undermined a port-of-entry limitation. *Id*. at 947.

Third, the Ninth Circuit turned to traditional canons of statutory construction. And while textualism and originalism cautioned against the government's interpretation, the canons made the government's interpretation almost an impossibility. The court invoked three canons that build upon each other. Initially, the court emphasized that "statutes are not read as a collection of isolated phrases," and that § 1325(a)(2) must be read in light of its place within § 1325(a) as a whole. *Id*. at 949-50 ((quoting *Abuelhawa v. United States*, 556 U.S. 816, 819 (2009)). Read together, subsections (a)(1), (a)(2), and (a)(3) form what the court called a "seamless whole": subsection (a)(1) covers entry away from an open port of entry, subsection (a)(2) covers evading examination while passing through an open port of entry, and subsection (a)(3) covers obtaining entry through misrepresentation at an open port of entry. *Id*. at 950. From this conclusion, the Ninth Circuit turned to the next canon, the anti-surplusage canon. This canon requires courts "to give effect ... to every clause and word of a statute." *Id*. (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)). If the government believes "eluding" does not occur

at a port of entry, then the Ninth Circuit cautioned the seamless whole was disturbed. If "merely crossing into the United States without examination or inspection violates § 1325(a)(2), regardless of time or place [as the government suggests], then much of the highly specific language in § 1325(a)(1) would be superfluous." *Id.* at 950. Courts must, where possible, avoid a construction that renders another statutory provision inoperative. *Id.* Further, this Court finds that other statutory provisions confront criminal offenses away from a port of entry. This includes 8 U.S.C. §1306(b) which renders failure by aliens to submit updated address information to the Attorney General of the United States a misdemeanor.

Next, the court applied "the related principle … that 'general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" *Id.* (quoting *Bloate v. United States*, 559 U.S. 196, 207–208 (2010)). Because § 1325(a)(1) specifically addresses entry at a non-designated time or place, that specific provision, not the more general language of § 1325(a)(2), governs that conduct. *Id.* at 950–951. And lastly, the Ninth Circuit noted that §§ 1325(a)(1) and (a)(2) are joined by the word "or," which is "almost always disjunctive, that is, the words it connects are to be given separate meanings." *Id.* at 951 (quoting *Loughrin*, 573 U.S. at 357). Reading § 1325(a)(1) as a mere subset of § 1325(a)(2), as the government urged, would effectively read "or" to mean "including," a definition the court found "foreign to any dictionary." *Id.* (quoting *Loughrin*, 573 U.S. at 357).

In summary, these tools (textualism, originalism, canons of construction) all led the Ninth Circuit to the same conclusion: § 1325(a)(2) is properly understood to criminalize only the evasion of examination or inspection at an open port of entry, leaving entry at any other time or place to be governed exclusively by § 1325(a)(1). *Id.* at 953-954.

Before *Corrales-Vazquez*, many district courts in the Ninth Circuit held that the government need not prove that the Defendant's conduct occurred at a port of entry. Courts held that while § 1325(a)(1) and § 1325(a)(2) overlapped, they did not render the other superfluous because § 1325(a)(2) did not require physical presence within the United States. *See e.g. United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1157 (S.D. Cal. Feb. 27, 2019) (vacated by *United States v. Corrales-Vazquez*, 931 F.3d 944, 946 (9th Cir. 2019).

Since *Corrales-Vazquez*, courts have uniformly and unanimously interpreted the text of § 1325(a)(2) in accord with the Ninth Circuit. In *Muscadin*, relying on the Ninth Circuit's textual analysis and history of the statute, the Northern District of New York held that the context and phrasing of § 1325(a)(2) indicates a port of entry requirement. *United States v. Muscadin*, No. 8:26-CR-103 (ECC), 2026 U.S. Dist. LEXIS 150240, *1, 2026 WL 1972081, at *5 (N.D. N.Y. July 8, 2026). Further, the court rejected the government's arguments that inspection is a continuous obligation, holding that the language of eluding immigration officers indicates a place of inspection. *Id.* at *16. Magistrate Judges in Maine and Massachusetts have also addressed the issue, both agreeing with the Ninth Circuit. *See United States v.*

*Guzman Tejeda*, No. 1:25-CR-10454, 2026 U.S. Dist. LEXIS 83173, 2026 WL 1005634, at *1 (D. Mass. Apr. 6, 2026) (finding that § 1325(a)(2) "refers to conduct that can occur only at a designated port of entry where examinations and inspections take place"); *United States v. Vega*, No. 1:25-MJ-00399, 2025 U.S. Dist. LEXIS 257273, 2025 WL 3558747, at * 2 (D. Me. Dec. 12, 2025) (concluding that "[t]he entirety of § 1325 and related provisions support the determination that the conduct proscribed by § 1325(a)(2) is conduct that occurs at a port of entry"). District courts in Texas and Nevada did the same. *United States v. Morales-Barajas*, No. 2:26-MJ-00224, 2026 U.S. Dist. LEXIS 99196, *14 (2026), 2026 WL 1208702, at * 5 (S.D. Tex. April 13, 2026) (holding that *Corrales-Vasquez* has "the more logical way to read the term 'elude' is in the context of such encounters"); *Jacob-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1099 (D. Nev. 2026) (adopting Ninth Circuit's analysis in application to a crime under 8 U.S.C. § 1225(b)(2)(A)). In fact, the Court could not find a single authority that disagreed with *Corrales-Vasquez*.[1]

In the end, the Court adopts the Ninth Circuit's analysis employing such stalwart tools as textualism, originalism, and classic canons of statutory construction. Not only could the Court not find cases that disagreed with the Ninth Circuit's holdings, but the United States could not provide any either. While the statute may

[1] The Fifth Circuit held, in the context of § 1325(a)(2), that entry into the United States is not required (The defendant was caught and apprehended before she reached the United States). *United States v. Montes-De Oca*, 820 F. App'x 247, 250-252 (5th Cir. 2020). However, in *Montes-De Oca*, the Court was not faced with interpreting application beyond inspection zones because the offense occurred at a port of entry. *Id.*

not require entry into the United States beyond the port, the inherent nature of "eluding" requires an act or attempt at or in close proximity to a port. Thus, the Court will find the scope of "eluded examination or inspection" to require such conduct to occur at or near a port of entry in accordance with the Ninth Circuit's reasoning.

#### 4. <u>Immigration Officer</u>

"Immigration officer" is defined as "any employee or class of employees of the Service or of the United States designated by the Secretary of Homeland Security, individually or by regulation, to perform the functions of an immigration officer." 8 U.S.C. § 1101(a)(18). Virtually any DHS official whose duties relate in some way to immigration activities qualifies as an "immigration officer."

### B. <u>CONTINUING NATURE OF OFFENSE</u>

Beyond the elements of the offense charge, the Court must also address whether the offense is a continuing offense beyond the interaction at the port of entry. The government argued that § 1325(a)(2) is a continuing offense because uninspected aliens have an ongoing requirement to be inspected, including updating address information. For as long as an alien knowingly continues to elude such inspection, they would continue to violate § 1325(a)(2). [DE 20 Page ID# 5]. Abudaieh argued that the offense was not continuing and limited to the time and place of the inspection.

The Sixth Circuit defines a continuing offense as "an offense which spans a period of time rather than a discrete act." *United States v. Bucheit,* 134 Fed. Appx. 842, 853 (2005). To answer the question of whether 1325(a)(2) is a continuing offense, the Court uses a two-part test established by the United States Supreme Court in

*Toussie v. United States*, 397 U.S. 112, 115 (1970). Under *Toussie*, an offense is not continuing unless the explicit language of the substantive criminal statute compels such a conclusion **or** the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. *Id.*

Applying the first possibility under *Toussie*, the statute must explicitly provide that it is a continuing offense. Examples of continuing offenses including concealment of bankruptcy assets, failure to appear, and wire fraud. 18 U.S.C. § 3284; 18 U.S.C. § 3146; 18 U.S.C. § 3237 *see also United States v. Green*, 305 F.3d 422, 432-33 (6th Cir. 2002); *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). *See also* 50 U.S.C. §§ 855, 856 (specifying failing to disclose that one has knowledge of or been trained in espionage is a continuing offense); 18 U.S.C. § 3284 (explicitly stating "the concealment of assets by a debtor … shall be deemed to be a continuing offense."). Section 1325(a)(2) plainly lacks such language. Consequently, the first possibility under *Toussie* does not result in a continuing offense.

The Court must then turn to the second possibility under *Toussie* that looks to the language of the statute to determine if the language nevertheless compels continuation. The government alleges §1325(a)(2) is a continuing offense because "eludes" is an action verb. [R. 1:01:07-1:01:20]. Under its interpretation, the verb "elude" somehow connotes an open-ended opportunity that is divorced from the event from which a person is eluding. Further, the government argues that aliens have an ongoing and continuing duty to report a change of address or state law violations. [R.

4:45-5:15]. The government provided no case law or other authority in support of its interpretation.

Ultimately, the Court finds this unpersuasive. As discussed above, the word "elude" indicates avoidance of a specific event. In this case, the eluding applies to an inspection or examination, a defined event under 8 C.F.R. § 287.1. If a person is going to elude, it must be some tangible event or person, namely the examination or inspection to which elude modifies in the statute. As the Ninth Circuit said, "not every 'word in a statute ... extend[s] to the outer limits of its definitional possibilities,' and the government's interpretation of the word 'eludes' 'sits uncomfortably with common usage.'" *Corralles-Vazquez*, 931 F.3d at 948 (quoting *Abuelhawa v. United States*, 556 U.S. 816, 820 (2009)). If the government's interpretation is right, elude becomes divorced from the examination or inspection. And while the government may complain about the ability to prosecute a party for failing to notify immigration of a change in address, 8 U.S.C. § 1306(b) provides that opportunity; § 1325(a)(2) does not.

Also, the government conceded that violations of § 1325(a)(1) and §1325(a)(3) are non-continuing offenses. Thus, by its own admission, § 1325(a)(2) sits between two non-continuing offenses, something that is hard to rectify.

Finally, the government correctly identified that *immigration officials* have an ongoing duty to conduct inspections. [R.40:38-40:41:07]. However, § 1325(a)(2) places no such duty on applicants for admission or aliens. Other courts, like the Southern District of Texas, have also held that § 1325(a)(2) places a continuing duty

on immigration officers but not the immigrant. *See United States v. Morales-Barajas,* LEXIS 99196, at *19 (holding that "[t]he ongoing duty placed on immigration officers is clear," but that is not the case for applicants for admission).

Next, the Court considers the nature of the crime. In the absence of specific language, the nature of the eluding offense must be one that Congress intended to treat as continuing. *Toussie*, 397 U.S. at 115. The gravity of the offense is inconsequential to the analysis. *United States v. Del Percio*, 870 F.2d 1090, 1096 (1989). The Court does not access the danger or seriousness of the crime, but whether the nature indicates the crime is not complete. Taking failure to appear as an example, "the crime is not complete on the day that a defendant fails to appear for sentencing but rather continues until the defendant is apprehended and finally appears for sentencing." *United States v. Green*, 305 F.3d 422, 433 (2002).

The United States argues that § 1325(a)(2)'s placement within the immigration scheme of inspection and its interplay with §1225 indicates continuation. [DE 20 Page ID# 5]. However, like many other district courts, this Court is not persuaded. Courts in Tennessee and Texas have found that illegal physical presence in the United States is not, in itself, a continuing criminal offense. *See United States v. Morales-Barajas*, 2026 U.S. Dist. LEXIS 99196, *17 (2026); *Tennessee Immigrant & Refugee Rights Coalition Et Al., Plaintiffs, V. Tennessee Highway Patrol Et Al., Defendants*., 2026 WL 2859725, at *7 (M.D.Tenn., 2026). These cases indicate that § 1325(a)(2) proscribes finite behavior. **Every court who has addressed the issue has held that § 1325(a)(2) is not a continuation offense**. See *United States v.*

*Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013) ("[A] § 1325(a) offense is completed at the time of the defendant's illegal entry, and the statute of limitations begins running at that point.");*United States v. Corrales-Vazquez*, 931 F.3d 944, 953 (9th Cir. 2019) (holding the offense took place at a fixed point in time indicating a limitations period.); *United States v. Rincon-Jimenez*, 595 F.2d 1192, 1194 (9th Cir. 1979); *United States v. De La Cruz-Rodriguez*, No. 25-mj-134, 2026 U.S. Dist. LEXIS 114697, at *9, 2026 WL 1440146, at *4 (D. Vt. May 20, 2026) (addressing venue and observing that "[t]he plain language of § 1325(a)(2) does not evince an intent to create a continuing offense");*United States v. Tenecela-Aguaiza, No. 8:26-cr-00061, 2026 U.S. Dist. LEXIS 95680, at *13, 2026 WL 1160623, at *4 (N.D.N.Y. Apr. 27, 2026).* ("[T]here is no reason to infer that Congress intended for Section 1325(a)(2) to be a continuing offense.") (venue); *United States v. Espinoza-Cabrera,* 831 F. Supp. 3d 167, 170 (N.D.N.Y. 2026*)* (same); *United States v. Guzman Tejeda*, No. 1:25-cr-10454, 2026 U.S. Dist. LEXIS 83173, at *25, 2026 WL 1005634, at *9 (D. Mass. Apr. 6, 2026) (considering venue argument and concluding that "the Government has not put forth any persuasive argument that § 1325(a)(2) is a continuing offense"); *United States v. Morales-Barajas*, No. 2:26-mj-00224, 2026 U.S. Dist. LEXIS 99196, at *26, 2026 WL 1208702, at *10 (S.D. Tex. Apr. 13, 2026) (finding "the offense of eluding inspection or examination under 8 U.S.C. § 1325(a)(2) is not a continuing offense" and that the prosecution was time-barred);*United States v. Cuadra Soto*, No. 25-mj-3267, 2026 U.S. Dist. LEXIS 8740, at *17, 2026 WL 123220, at *7 (D. Neb. Jan. 16, 2026) (finding venue in Nebraska improper because the defendant crossed into the United States

"somewhere in Texas" and because "the statutes do not support finding an alien is subject to an ongoing, continuing obligation to report for immigration inspection pursuant to section 1325 after they illegally enter the country"); *United States v. Vega*, No. 25-mj-00399, 2025 U.S. Dist. LEXIS 257273, at *7, 2025 WL 3558747, at *3 (D. Me. Dec. 12, 2025) (rejecting the government's argument that § 1325(a)(2) is a continuing offense, explaining that "[t]he obligation to submit to 'examination' and 'inspection' at the time of entry as required by § 1325(a) cannot reasonably be construed to extend to an encounter with a border patrol agent months or years after entering the United States") (on appeal at the first circuit); *United States v. Pereira*, No. 5:26-CR-00112 (BKS), 2026 U.S. Dist. LEXIS 132352, *1, 2026 WL 1724480, at *2 (N.D.N.Y. June 15, 2026) (affirming dismissal of a criminal complaint because the prosecution was time barred and not a continuing offense); *United States v. De La Cruz-Rodriguez,* Case No. 2:25-mj-134, 2026 U.S. Dist. LEXIS 114697, 2026 WL 1440146, at *4, *9 (D. Vt. May 20, 2026) (concluding that § 1325(a)(2) is not a continuing offense, venue was therefore not proper in Vermont where the defendant entered the United States in Texas, and "the offense conduct for a § 1325(a)(2) violation 'occurs at a time and place where the alien is at risk of undergoing [the required] processes in the first place . . . at open and operating ports of entry'").

As the Vermont district pointed out, the Court is aware of only one case which held that § 1325(a)(2) was a continuing offense. U*nited States v. De La Cruz-Rodriquez*, 834 F. Supp. 3d 480 (D. Vt. 2026) (citing to *United States v. Espionza-Cabrera*, 8:25-mj-365, Filling No. 17 (N.D.N.Y Dec. 10, 2025)). However, the decision

was reversed on appeal to the district court judge. *See United States v. Espionza-Cabrera*, 8:26-cr-00062 (AMN), Filling No. 5,1, 13 (N.D. N.Y Apr. 27, 2026). The United States cited no authority, binding or persuasive, that holds § 1325(a)(2) as a continuing offense.

Following *Toussie's* framework, this Court, consistent with other courts across the nation, holds the offense is not one of continuation.

## III. JUDGEMENT AS A FACT FINDER

As the trier of fact, the Court must now, considering the evidence presented and the law as framed above, determine whether the government has met its burden of proving that Abudaieh was guilty of violating each element of 1325(a)(2) beyond a reasonable doubt. The Court notes that almost none of the facts of this case were in dispute. Rather, the parties disagree on the legal requirements of §1325(a)(2). The Court takes each element in turn.

First, the government proved Abudaieh is an alien as defined by 8 U.S.C. §1101(a)(3). The defense stipulated to Abudaieh's status as an alien, who entered the United States illegally. [R. 2:58-3:02]. Next, the government proved agent Joseph J. Jung and Officer Senica Woods are immigration officers as defined by U.S.C. § 1101(a)(18). The Court notes that an immigration judge or court does not meet the definition of immigration officers. Officer Woods testified that immigration judges are not considered immigration officers. [R. 35:48-36:03]. Thus, to the extent asserted, any theory that Abudaieh eluded immigration court orders or conditions is irrelevant.

Where the government's case fails is with the issue of eluding occurring at a port of entry and the continuing nature of the offense.

For the port of entry, the government alleged that Abudaieh failed to update his address and violated Kentucky State Law which were conditions of his release from inspection. [R. 4:45-5:15; *See* Ex. 2]. The government sufficiently proved that Abudaieh was taken to a border patrol station on May 14, 2024. [R. 23:42-23:49]. It is unclear whether, applying *Corrales-Vazquez*, the Brownfield Border Patrol Station would be considered a port of entry. The government presented no evidence of the station's proximity to the border or its use as an inspection zone.

Even if the Court considers Brownfield a port of entry, the government provided no evidence that Abudaieh eluded inspection at the port. *See Corrales-Vazquez*, 931 F.3d 948-9. (arguing that "to 'elude' something means more than just to simply avoid it")). Namely, the government presented no evidence that Abudaieh was deceptive, attempted to escape, or entered surreptitiously. Rather, the facts indicate that Abudaieh was compliant, answered questions, submitted himself to fingerprinting, and honestly admitted to officials his alien status. As Officer Woods testified, the inspection was complete without issue and without any eluding by Abudaieh. [R. 37:35-37:55].

The government's case hinges on Abudaieh's conduct nearly two years after his border crossing when he failed to update his address and possibly violated state law. Simply put, such conduct does not fall under the Court's interpretation and application of § 1325(a)(2). While Abudaieh may have had an obligation under other

statutory provisions, such as 8 U.S.C. § 1306(b) to update his address, the government failed to prove Abudaieh eluded examination during the finite process of inspection in violation of §1325(a)(2).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court finds Abudaieh **NOT GUILTY** of eluding inspection or examination under 8 U.S.C. §1325(a)(2). The government failed to meet its burden of proof that Abudaieh eluded inspection at a port of entry. Further, this Court holds that §1325(a)(2) is not a continuing offense as defined by the United States Sixth Circuit Court of Appeals. The Court will enter a judgment consistent with these Findings of Fact and Conclusions of Law.

Signed this 30th day of September, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY